The Honorable Gayle Mollenkamp State Representative, 118th Distict State Capitol, Room 174-W Topeka, Kansas 66612
Dear Representative Mollenkamp:
You request our opinion concerning a county option severance tax on water. Specifically, you ask four questions:
1) Do counties under current law have the power under home rule to impose a severance tax on water being exported to other counties?
2) If such a power exists, could a tax be imposed only on water being exported to other counties, or would it have to be imposed on all water being extracted within the host county? 3) If counties do not have the power under current law, could the legislature authorize such a tax? 4) If counties do not have the power under current law, could the legislature impose a statewide tax on water being exported from host counties to other counties and distribute the revenue back to the host counties?
Counties in the state of Kansas are granted home rule powers pursuant to K.S.A. 1993 Supp. 19-101a, as amended by L. 1994, ch. 109, sec. 1 and K.S.A. 19-117. As to the power of taxation, it has been established that counties may "levy any type of exaction unless the legislature preempts the field by uniform enactment."Executive Aircraft Consulting, Inc. v. City of Newton and theCounty of Harvey, 252 Kan. 421, 424 (1992).
The home rule powers granted to counties "shall be liberally construed for the purpose of giving to counties the largest measure of self-government." K.S.A. 19-101c. With this in mind, we must next consider whether the state has preempted the pertinent field to the exclusion of local legislation. The Kansas Supreme Court provided guidance for this analysis in MissouriPacific Railroad v. Board of County Commissioners, 231 Kan. 225
(1982). The enactment of uniform legislation is a determining factor in state preemption of county home rule powers. Id. at 227. The court further explains:
 "The rule denying power to a local body when the state has pre-empted the field is a rule of necessity based upon the need to prevent dual regulation which would result in uncertainty and confusion; and whether the state has pre-empted the field to the exclusion of local legislation depends not only on the language of the statutes, but upon the purpose and scope of the legislative scheme." Id. at 228.
In 1945, Kansas adopted K.S.A. 82a-702 providing that "[a]ll water within the state of Kansas is hereby dedicated to the use of the people of the state, subject to the control and regulation of the state in the manner herein prescribed." The act was found to be a constitutional enactment in Williams v. City of Wichita,190 Kan. 317 (1962). The court in Williams outlines the purposes of the act according to committee reports. The main purpose of the act was to "establish an orderly system of appropriation of water." 190 Kan. at 333. The court also indicated that one of the specific purposes of the act was "to clothe a central state administrative agency with the authority to control the appropriation of water as directed by the act and in conformity with the legislation now in practical operation in many states."Id. It is clear from the language of the act and the interpretation of the act in Williams that the state legislature intended K.S.A. 82a-702 to require statewide uniformity concerning the waters of the state.
Missouri Pacific Railroad found that a demonstrated desire for statewide uniformity amounted to state preemption of the county home rule powers. 231 Kan. at 233. The court held in that case that county home rule concerning the regulation of railroads in the state would result in "the possibility of confusion and capricious action," and upheld the state's purpose to occupy the field and prohibited local regulation in the same area. Id.
Additionally, at least one state's supreme court has held that tax assessments are not matters of purely "local concern," especially when procedural safeguards are involved. Boyle v. City of Bend,234 Or. 91 (Ore. 1963). The distinction between "local" and "state" matters is not always clear; one commentator explains the interaction of city's home rule power and the state's legislative power:
 "There is no area exclusively carved out for autonomous local control, yet the Kansas municipality is free to enact any ordinance where the legislature has not yet spoken or where there is no conflict even if it has spoken. The need for special legislation is dissipated because a city's home rule authority flows directly from the constitution, yet the state can always upset the local ordinance by enacting a statute which clearly conflicts with it. This is the proper balance of power in state-local relations: the city as innovator and initiator and the state with ultimate control if it desires to exercise it." State Control of Local Government in Kansas, Clark, 20 K.L.R. 631, 662 (1972).
Much like the railroads in the state, the state water supply crosses county boundaries evidencing a need for statewide regulation. Although the statute does not specifically mention taxation on water, the state has demonstrated an intention to occupy the field of control and regulation of water by the enactment of K.S.A. 82a-702.
With this background, each of your questions will be answered in turn. First, you ask whether counties may levy a severance tax on water being exported out of the county. Because the state has occupied the field of regulating all of the water in the state, county home rule powers in this field are preempted, and the county may not levy a severance tax on water being exported out of the county.
Next, you ask whether such a tax could be imposed only on water being exported to other counties, or if it would have to be imposed on all water being extracted within the host county. Because we have opined that counties do not have the power to impose a severance tax on water being exported out of the county, the answer to this question is beyond the scope of this opinion.
Your third question assumes counties do not have the power under current law to impose a severance tax. You inquire whether the legislature may authorize such a tax. The Kansas Supreme Court has found that the "entire matter of taxation is legislative and does not exist apart from statute." Joseph v. McNeive,215 Kan. 270, 271 (1974). From this case, we can infer that the legislature may determine the manner of taxation in the state, as long as constitutional restrictions are observed.
Your fourth question is whether the legislature could impose a statewide tax on water being exported from host counties to other counties and distribute the revenue back to the host counties. Again, the entire matter of taxation in the state is an issue to be determined by the legislature. Without knowing the specifics of any such legislation, we are unable to opine as to its constitutionality.
In conclusion, county home rule power with regard to imposing a severance tax on water being exported out of the county is preempted by legislative enactment in the field. Whether the state chooses to impose a severance tax on water being exported from host counties is a matter for legislative determination.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Nobuko K. Folmsbee Assistant Attorney General
CJS:JLM:NKF:bas